Time to get set up, but I'll call the last case while you do that. It's 18-10449, Angela Williamson v. Travelport, LP, et al. So, Ms. Pridgen, whenever you're ready. Thank you, Your Honors. Nancy Pridgen on behalf of Angela Williamson, who happens to be in the courtroom today. If it please Your Honors. Again, Ms. Williamson was an employee of predecessors to the current day Travelport. She retired with, or she left employment with approximately 28 years of service at predecessors of Travelport, and she left with a deferred vested pension that had a normal retirement date of 2001. She left in, excuse me, 2011. She left in 1997. Ms. Pridgen, if I can interrupt you for one second. The facts here are long. They are long. And they are complicated. That was it. And if you start down that road, we're never going to get to the issues that you want to discuss. Yes, sir. So, I have a question to start us off. With regards to your claim, or your count, about Travelport's failure to produce documents, the complaint, the count itself is not specific about which documents you contend constituted the violation. Is that a problem for you? No, sir. Because of Rule 8, which says we just need a clear and concise pleading that puts them on notice. It does not have to be pled with particularity, because Rule 9 does not apply. And they are fully aware, they are more aware, actually, of what documents that they haven't produced than we are. And so, as to historical plan documents, you know, we don't know what we don't know. And so, to hold us to a higher pleading standard would be counterproductive in this case. Well, can you help me out here and now and tell me what you requested that you were not given? Yes, sir. We have determined that we know certain documents we were not given. There may be more. But the short list is the Summary Plan Description, SPD, for the UAL plan. The COVIA... Which is from what year? That is from any year. We've not been given any SPDs. And she was employed in the plan and a participant of those UAL plans from 1968 to 1988. Okay. The COVIA SPD, which the COVIA plan, she was employed with COVIA from 88 to 92. And you were not given any years for that either? No SPD for the COVIA plan. We do have the COVIA plan, but not the SPD. Okay. We were not given any Galileo SPDs between 1993 and 2009. So we do have the 1993 and the 2009 SPDs. So let me be clear, SPDs under the law are required to be updated at least every five years. So that is a 16-year gap that it's unlikely, nay, impossible that there's not an SPD between those years. And what would that show if you had it? I mean, how would it help your case? We have no way to know that, Your Honor. You just want the documents. We do want the documents. There's a possibility, Your Honor, that the SPDs continue to have the pre-25-year-old service problem. One of the main issues in our case is whether or not she gets 12 months of service for her first four years of service with UAL from when she was 21 to 25. There is a statement in the 1993 SPD and the 2009 SPD. And what we want to know from those Galileo SPDs is whether or not, or all the SPDs, frankly, which we don't have, is whether or not the statement about crediting the years, ages 21 to 25, continues in that line of succession of the SPDs. We don't have them. We don't know if it says that. And that's one of the things that could go in our favor. We simply don't know. Explain to me, clarify what it is that the SPDs that you have say about that issue. Do they say anything about that issue? They do. The 1993 and the 2009 SPD say that, in conflict with the provision that has been cited by defendants in the plan, say that for every month you served between your 21st birthday and your 25th birthday, you will receive one month of benefit service. And so our argument is that should be followed. The defendant's argument is you do not get your 21st birthday unless you've already served a year before you turn 21. So there's a conflict, alleged conflict, between the plan document and the SPD. So what we need is the SPDs because we need to see what they say about the 21 to 25 issue. All right, let me pivot on the documents issue to your last count. Yes, sir. And that's the breach of fiduciary duty claim. And I understand that you take issue with the district court saying that that fiduciary breach claim was essentially a mirror image of your other claims. So I understand that argument. Yes, sir. But if all you have in a different case is a failure to provide documents that is controlled by 1024. Yes, sir. Is that a breach of fiduciary duty too? No, sir. Okay. If all you have is a failure to maintain documents, is that a breach of fiduciary duty, although it's also a breach of 1024? Not if it's governed by 1024, it needs to be analyzed and enforced via 1132C. That means that part of your breach of fiduciary duty claim has problems, right? Because as I read your breach of fiduciary duty claim, it has three prongs. Failure to warn Ms. Williamson about what was happening, what was going on, and how it was going to affect her. I understand that part of it. But the other parts were failure to maintain documents and failure to provide documents. The third part of that seems to me to be problematic. Okay. Because if you're alleging that TravelSport violated 1024 by not giving you documents it had to give you, and you have a remedy for that and a statutory penalty under 1024, how does that convert or make out a breach of fiduciary duty claim? Let me clarify. The documents that we are alleging were not produced that are enforceable via 1024 and 1132C are historical plan documents. The documents, we have two allegations, the documents that we are alleging that were not maintained relative to the pension plan, not the plan documents, but source documents related to the employment of the pensioners or potential pensioners are not governed by, not necessarily governed by 1024. Oh, I get that now then. Okay. Now then, that's my, this is my last question to you so you can deal with the rest of your argument. What part of ERISA requires a plan fiduciary to keep those source documents like earning statements, W-2s, terms of, what part of ERISA requires a plan fiduciary to keep those documents? There are a couple of specific statutes that speak to it. One is 1059, specifically 1059A, that requires that the plan keep documents that it needs in order to calculate benefits. That's also, frankly, a governing principle under ERISA itself. You cannot possibly administer your plan without source documents that allow you to, in this case, figure out what final average compensation and months of benefit service consist of. And in this case, we have a situation where the summary documents that were kept were completely inaccurate, as we allege, and were proven to be completely inaccurate as to final average compensation, and we allege are also completely inaccurate as to months of benefit service. You cannot, it's not conceivable that you can have a duty to administer a plan under ERISA and can be so absolutely sloppy and inaccurate as to not keep accurate, sufficient records under ERISA to administer your plan in such a matter that you cannot prove the entitlement benefits for your participants, cannot administer the plan in an efficient and accurate way. I have one more question for you, and I'll take you over your time because I want to ask your colleague on the other side about this. One of your arguments on appeal is that the district court should not have conducted without briefing from the parties and without argument from the parties a full merits-based determination of your 1132 benefits claims. Tell me why. In, as your honors are well aware, in a normal ERISA case, the ERISA administrative record comes to you to review essentially as an appellate court, comes to the district court as it is an appeal, and without that administrative record, you cannot know what was in front of the administrator when they made their determination. The decision to make the determination here was not based on the full record. There's no dispute about that. What defendants, appellees say in their brief is, well, the court had enough to do what it wanted to do. Well, the court thought it had enough, but what the court didn't have was the full record, and that's a dangerous precedent to set. There are cases like Slackman, an unpublished case in front of this court, where there are finite, discrete legal issues that can be determined at the Rule 12 stage. Nobody disputes that you can determine legal issues at the Rule 12 stage, but the complaint that was before this court has so much more complexity than single legal issues. There are multiple factual issues that require discovery, and the court made a determination on judicial review without the full set of documents before it. He had no idea whether or not, well, he did know, we told him, that he did not have the full set of the administrative record before him. And if we do that, we're going to start kicking complaints out for plaintiffs that deserve discovery and a full hearing at at least summary judgment. All right. Thank you very much. Actually, I've got a question, if you don't mind. This is a separate question from whether it was appropriate to decide the case in the way that he did, rather than going to summary judgment, but let's say that you don't get any more documents through this process. Do you think that the administrative record can end up supporting your position, or do you need an order that your client should receive the additional documents that she's asking for? That's an interesting question, Your Honor. There is a notation in their final appeal letter, the travel court, the plan's final appeal letter, that they did an alleged investigation into personnel files, which is exactly the previous counsel was asking for all along during the administrative process. It's possible those are in the administrative record. We won't know that. We don't have the administrative record. The court didn't have the administrative record. It's possible those source documents that we've been asking for all along are actually in the administrative record, but until we get the administrative record and have the possibility to look at it, determine whether or not we need to challenge what's in it or what's not in it, we do have that right under the Eleventh Circuit, then we cannot make a determination as to whether or not extra discovery is necessary. Right. Thank you very much. Mr. Pope. May it please the Court. My name is John Houston Pope. I'm joined at counsel table by Douglas New of Travel Port. We are here on behalf of Appalese. ERISA provides that every participant in a pension plan, a defined benefit pension plan, will get a statement annually showing the status of their benefits, and those went to Angela Williamson. She in fact files and concedes that in 1999, she had a statement that told her exactly how her benefit would be calculated. She puts it off to the side saying, well, I was really only concerned with that lump sum part of it, but it showed everything about the calculation. She then waited approximately 12 to 15 years to question whether or not any of that was accurate, and that's something that simply can't happen. Well, it turns out she was partly right. Well, she did turn out to be partly right, and she should have brought that up with the companies she was working for at the time. In today's complicated economy, companies go through mergers and acquisitions and spinoffs and combinations, and being contemporaneous with the errors that are on the records are important because frankly, we can't have warehouses dedicated in this country to storing all of the documents that would be necessary for all of the source information she wants to talk about. She wants to have every page. But there's no ... You may be right as a policy matter, but there's no statute of limitations requiring a participant to make a claim when they get those yearly statements, right? There has been implied by many of the courts that the notion that you have only a reasonable amount of time to deal with this. In fact, this court in the Combs case said that the implication is it's about 10 years, that that was the expectation of Congress was that these records would be kept for 10 years. And that is, I think, a fair reading of the legislative history. What we have gotten in cases like Rorty and another Seventh Circuit case is the six-year fiduciary duty standard being applied to it, which says that ... Have they been destroyed during all these changes of her employment? We suspect that we do not have anything resembling what she wants, Your Honor. These things have gotten digitized since we've come into the information age, and as a result, we have what's kept in the system on this, which in this instance, for instance, is her annual compensation, it doesn't give her the weekly stuff she wants, it doesn't give her the monthly stuff, whatever it is that she thinks would allow her to have a better handle on what her pension amount would be. We have the data that was stored by predecessor companies and set forth in that manner. Mr. Pope, tell me about the district court's ruling on the benefits claim without a full That seems to me to be very problematic. Well, Your Honor, I can see instances in which it would be problematic, but this is a case that came forward with, what was it, 32, 34 attachments to the complaint. That was plaintiff's choice to plead with that much information attached to her complaint. Doesn't that mean that the district court should have converted it into a summary judgment if he's really going to look at all these documents and make a merits decision? Not in the instance that's here, Your Honor. This instance was interpreting plan documents, which is quintessentially a legal question and therefore is analogous to any other legal question that you would do on a 12B6 motion. That's why, for example, the Second Circuit in the Pruder v. Local 212 Pension Fund Trust came forward with the plan documents attached to the complaint, and that's what the court was going to interpret. I don't disagree with you on the ability to do that as a general matter. I think you're right about that. But in addition to what she put forward, those 33 exhibits, there may be other things in the administrative record, including, for example, some of the documents she claims she wants and hasn't been provided, that might lead the district court to a different conclusion. More problematic is that the district court didn't really get briefing on all of the merits issues that it decided because the parties didn't tee them up that way. That's even more problematic to me. It's one thing if you had moved, right, and you say, those 33 documents plus the detailed allegations give you enough to make a merit determination. Here's why we win on every single one of the benefits claims, and you go forward. And then Ms. Williamson gets a chance to respond either in turn or says, we can't do it this way. We have to go to the administrative record or whatever. But all those arguments that the district court ended up agreeing with were not arguments made by you. That's no blame on you or Travels Ford in the way the case was litigated. The issues just weren't teed up in the normal way, and to me, that's a little bit concerning. Well, let me divide that into two pieces that are there, Your Honor. One piece is, did he have, was the administrative record contain something else? Both of the letters from the, both at the initial claim stage and at the appeal stage list in meticulous detail the documents that were considered. Ms. Williamson has all of those documents. All of those were turned over in time, so there aren't additional materials in the administrative record that are missing from her. Were all those attached to the first complaint? I honestly didn't compare it up that way, but I think that the important ones were. So does the district, the question is, does the district court have to have every piece of paper in the administrative record in order to have issued an opinion on it? Absolutely not. I mean, you, we have all the time in LTD cases, in other types of benefits where an enormous amount of the file is things that no one will ever consider because it's just not part of the function of the district court. It's been put in. Everyone has put it into the administrative record because it's been argued about, but it's become irrelevant over the course of deciding the issue. And that's the same thing, for instance, with the record below. Appellants did not put in every document that they had in there in the appendix because they knew that many of those documents they did not believe were important to the court's consideration. There's always a culling of a record as you go through an appeals process. Let me give you the sort of document I'm thinking about. And it's because I had a case like it. One of the individuals at the plan administrator who was tasked with the initial level review of the appeal, doing the ground level work, came to conclusion X based on facts one, two, three, and four. However, the ultimate plan administrator rejected that employee's findings and conclusions and recommendations and decided that the answer was Y based on facts not one, two, three, and four, but three, four, five, and six. But that employee's initial assessment was in the administrative record, and it provided at least a perspective on whether or not there had been an abuse of discretion by the administrator in reaching the ultimate benefits decision. That's the sort of document that a participant like Ms. Williamson is never going to see unless the administrative record is produced. Now there may or may not be anything like that, and I'm not suggesting that there is in this case, but it's just the fear that you just don't know until you get a record. The administrative record may conclusively show that you got all the benefits decisions exactly right, but it's just my perspective and I speak only for myself, not for my colleagues. I think it's a concern, Your Honor, when the issues in the record are ones that are factually based. This isn't a factually based determination. It wasn't one that the district court made, which was what I want to get to on the second part of what you originally raised, which is beyond the fact that we know what records were reviewed and therefore we know what may have gone into the determination. This was about how to interpret plan documents and how they apply to this particular instance. So the question of whether or not the years of credit that you get for 21 to 25, all a ERISA period in this instance, is one that comes from the plan documents. It comes from how you interpret the plan documents. The argument has been made, for instance, that somehow or another that should be changed because of what was said in an SPD that was issued 20 years after, or 10 years after Ms. Williamson left the company. So those issues can be done on the face of the documents and before the district court, and whether or not anybody, and this is not the case, but to work with your hypothetical, anybody within the company debated whether or not they thought that the interpretation was right or not. When the Employee Benefits Committee issues its interpretation, it gets the deference and it is the interpretation of it. I understand that in some companies or in some benefits committees there may be a debate over whether or not the proper interpretation is X or Y. Have we thought about whether or not there should be a Z consideration? But at the end of the day, the committee makes a determination and the question is, you look at the plan, you look at the determination, is it reasonable? That's what this court has said for, you know, as long as I've been associated with anything coming out of this court. That goes back to a clerkship that started in the Middle District of Florida in 1987. It's been long-standing, long-standing law in this court that it is about what is reasonable and whether or not the committee acted in a reasonable manner in interpreting the plan documents when the plan documents authorized them to do so. And that's what occurred here, Your Honor. They reasonably interpreted the plan documents and the exclusions with regard to certain service for Ms. Williamson are part of those plan documents. I know there was a question about whether or not the complaint is adequate in its allegations on the document penalty. And we think that because document penalties are precisely that, penalties, which are strictly construed, you do have to have a certain level of specificity in the claim. It's not a lot, but it's missing here. You have to allege what is the writing that you're claiming requested the particular documents and what were the documents that you didn't get as a result of the writing. Of course, you might have to speculate a little bit to whether or not you didn't get something, but the statute is very clear about what documents you're entitled to. For instance, when an appellant's counsel tells you, well, we didn't get the SPDs for all these different years, the statute tells you you only get the current SPD. That's it. That is the only document. And those are not documents under which the plan is governed or is established or maintained because, as the Supreme Court told us in the Amara case, the SPDs are not the plan. They are simply a summary of the plan. It is the plan that matters. We've turned over the documents with regard to the plan. We've turned over all of the plan pieces that have any type of influence over the determination of Ms. Williamson's benefit. Circle back around because I realize that I didn't finish answering for you the question of was it proper for the judge to take a look at the benefit claim given the way that it was posed. And I think that it was for this reason. We raised, both in the original motion to dismiss and in the motion to dismiss the First Amendment complaint, that there was no allegation that the Benefits Committee acted arbitrarily or capriciously, abused its discretion or whatever, and no allegations to make that a plausible claim. And that's fundamental to what is being done with a benefit claim in ERISA cases. The answer to that was, between the original complaint and the amended complaint, was just to simply add a conclusory allegation about abuse of discretion. And we raised that again. And we told the district court, we have laid out the reasons why this is correct in the various benefit denial letters, and they are attached to the complaint. If they can't identify what is in those that would constitute an abuse of discretion, they do not have a claim. So they were put on notice with the motion to dismiss that they needed to at least articulate, at least articulate, Your Honor, what was wrong with the analysis of the Benefits Committee. Because that analysis has to do with an interpretation of planned documents. Those planned documents were already in the record. And that would be enough to get past the motion to dismiss. Having failed to make that articulation, having the opportunity to do so, and have the opportunity to say, wait, this should be done by summary judgment. None of that appears in the record, Your Honor. That was not the argument that was made. That's not what a complaint has to do. Well, the complaint has to state a plausible claim, not a claim that is a winner on the merits. It doesn't have to be a winner, Your Honor, in terms of being able to have the evidence on it. But it has to be a winner in the sense that it is alleged something that if believed or You have to at least have the minimum facts that you have plausibly laid out the basis that you would win if you had all of the whatever factual discovery you might be entitled to and jury believed it, or in this case, because it's a bench trial, the judge believed it. I don't think that's the standard. Isn't the standard whether or not the claim is plausible and beyond a speculative level with sufficient factual allegations? Factual allegations that make it plausible. Right. It doesn't mean you're going to win. No, but to say there is an abuse of discretion without explaining it isn't plausible. That's just stating the conclusion that you're trying to get to. If you're wanting to state that there's an abuse of discretion, the plausible pleading is to say there was an abuse of discretion because the committee overlooked X, or the committee interpreted this plan for vision in the wrong way, or the committee did not take into account these facts. It doesn't have to list every last one of them. Doesn't have to list anything more than enough that if it's on there, a judge could conclude that if that was demonstrated, that would end up being a successful claim. So you have to make out an abuse of discretion legal argument in an ERISA complaint on a benefits claim? You have to set forth sufficient facts to allow the court to be able to infer that the abuse of discretion occurred. For instance, in an easier case than this one to deal with, if it was a long-term disability claim, you'd need to set forth the facts that would show that the person is plausibly disabled under the terms of the plan. That's why I get those all the time. They don't just simply say, she contends she's disabled. It was an abuse of discretion to say she wasn't. Let's go to court. I think the problem for you is that the court's language that it uses is not really consistent with that. It says, considering the amended complaint and the attached exhibits, the court does not conclude that the plan administrator's decisions were de novo wrong. That looks a lot like the district court reviewing the merits and saying, after I've reviewed all this, I agree, I don't disagree with the way the plan administrators are seeing this. Isn't that quintessentially a merits decision? Well, when he uses the term de novo wrong there, Your Honor, he's plugging into the blankenship analysis, which really harkens back to Brown versus Blue Cross Blue Shield and got modified as the law developed, which said that the first step in determining whether or not an abuse of discretion occurred is whether or not the court believes that the interpretation that was taken by the plan administrator was de novo would be wrong on a de novo basis. But is that ordinarily a motion to dismiss decision or a summary judgment decision? It's ordinarily a motion to dismiss decision when it's construing documents. If you have a breach of contract claim, which really benefits decisions are an analog to, if you have a breach of contract claim, the first thing you do is read the contract and determine whether or not there's something that could be breached. So oftentimes you have motions to dismiss come before you, appeals for motions to dismiss on a breach of contract where the court below has said, I read the contract, there's nothing here to breach. There was no breach because the contract clearly empowered the defendant to do what the defendant wanted to do. That's a commonplace legal situation. The plaintiff may argue, well, I needed discovery on this because I think the contract is ambiguous. And what the courts do is make that threshold determination of whether or not the contract is ambiguous and then what the rights were if it is not. If it's ambiguous, of course, it has to go through the discovery process perhaps. But this was a case where the judge agreed that in essence, this plan is not ambiguous and then the non-ambiguous plan was one that entitled Travelport and the plan to dismissal of the complaint. It would be a formality to go the other direction. All right, Mr. Polk, thank you so much. Ms. Fridgen? Thank you, Your Honors. Let's start at where Mr. Polk ended. Of course, the blankenship analysis is a summary judgment analysis. It is not a motion to dismiss analysis. Mr. Polk cited Pruder from the Second Circuit as authority for this can be done at the motion to dismiss stage. Well, Pruder from the Second Circuit, again, this is 858 F3rd 753, specifically said that it had all, A-L-L, all of the information considered by the trustees. It said there's no requirement that the administrative record be collated in a particular fashion or it be produced via affidavit so long as the district court is provided with all of the information considered by the trustees in making their decision. The requirements for an administrative record is satisfied. That means Pruder even wouldn't allow this. We didn't have all of the information. We still don't have all of the information. Pruder doesn't help here. And the analysis is not, it was not simply analyzing the plan language. There are three issues here. Two of which are extremely fact-based. One of which is analyzing plan language, but it's analyzing historical plan document language which supports our document penalties theory. But let's talk about those three issues right now. And again, all of these deal with the calculus under the pension factors that deal with months of benefit service. All three of these do. You've got the three of them are to make sure I've got them in my mind correctly from what I read. You've got, and I'm generalizing the description. You've got the first year of service issue. Correct. You've got the missing 12 months of benefit service issue. Which is factual. And you've got the 54 months of benefit service issue with COVIA. Exactly. Are those the three? Perfect. Generally speaking? Yes. Okay. Those are. And the first two are factual. The first one has to deal with the reliance upon prior SPDs, which again, we get to, reliance is a fact issue. That's not a legal issue. The court doesn't get to judge reliance at the pleading stage. He doesn't get to make a fact finding at the pleading stage. And opposing counsel wants to limit our reliance, or Ms. Williamson's reliance on the 2009 plan document, excuse me, the SPD. That's not the only SPD that had it. There was a 1993 SPD. It had the same language. That was before she retired. Absolutely, she could have relied on the 1993 SPD to make decisions about when she was going to stop working. What's your response to Mr. Pope's contention that the SPDs don't have to be produced, that the only requirement is that the plan document needs to be produced, or the plan? Because under 1024, the final provision is, in addition to current plan, current SPD, trusts, contracts, it says, and any other document under which the plan is established or operated. That's the operative language. And we have both Sixth Circuit and Seventh Circuit cases cited in our briefs that say that if you rely, if you trust plan administrator, rely on historical plan documents to operate your plan, those become documents, plan documents, under which the plan is operated or established. And defendant's appellees have not cited any case that says if you actually rely on prior plan documents, including SPDs, or anything else, that that takes it out of that catch-all phrase in 1024. It absolutely doesn't take it out of 1024. It puts it square in the middle of 1024. Those historical documents are, even SPDs, even historical SPDs, are documents under which the plan is operated or established. Now, do we have all of the documents? We do not have all of the documents. They're not all attached to the initial complaint. There were things that we didn't attach to the initial complaint. We certainly, as I mentioned in my opening statements, we certainly don't have the personnel files that they mentioned in their appeals letters. I see my time is coming to a close. I'd like to finish by saying there is no requirement to challenge a statement, a pension estimate. There's never been a requirement to do that. There's no legal requirement. Council just admitted that all of the evidence that they purport to complain about having to keep is digitized. In this day and age, people's first asset is usually their house. Real estate records are kept for literally hundreds of years. Likely, their second asset is their pension plan. If it takes 40 years worth of record keeping to get your pension plan accurate, then that's what it ought to take. Neither Combs nor any other provision of the law says pension plan administrators can chuck the records after six or ten years and just throw their hands up in the air and say, well, we'll just guess at what your pension benefit is. That is not the law. That cannot be the law. With that, I would like to ask that you remand this case to the district court. Thank you both very much. We are in recess for the week. Thank you. All rise.